# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**UNITED STATES OF AMERICA,**                    **Criminal No. 04-403 (JNE/SRN)**

        **Plaintiff,**

        **v.**                                                   **REPORT AND**
                                                                      **RECOMMENDATION**

**CAMERON J. LEWIS (1),**
**J. TYRON LEWIS (2),**
**SHANNA L. BLACK (4), and**
**MARION H. MARKLE (5)**

        **Defendants.**

---

Robert Lewis, Assistant United States Attorney, on behalf of Plaintiff

Jennifer A. James, Neil A. Kaplan, and Richard H. Kyle, Jr. on behalf of Defendant Cameron J. Lewis (01)

Jessica Stengel, Loren E. Weiss, and Jon M. Hopeman on behalf of Defendant J. Tyron Lewis (02)

James C. Bradshaw, Mark Moffat, and Peter B. Wold on behalf of Shanna L. Black (04)

Daniel M. Scott on behalf of Marion H. Markle (05)

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      The above entitled matter comes before the undersigned United States

Magistrate Judge on Defendant Shanna Black's Motion for Return of Property/Pretrial

and to Vacate or Modify the Restraining Order and to Request an Expedited Hearing

(Doc. 98) and Defendants' Motions to Change Venue for Trial (Docs. 180, 184).[1]  This

---

[1] Defendants Marion Markle and Shanna Black each filed separate motions, but the Court previously granted all of the defendants' respective motions to join in each other's motions.

case has been referred to the undersigned for resolution of pretrial matters pursuant to

28 U.S.C. § 636 and Local Rule 72.1.

## I.      MOTION TO RETURN PROPERTY AND TO VACATE OR MODIFY THE RESTRAINING ORDER AND TO REQUEST AN EXPEDITED HEARING (Doc. 98)

### A.      Background

The Indictment in this case was filed on October 19, 2004.  (Doc. 1.)  It did not

name Defendant Black as a defendant.  (See id.)

On December 30, 2004, Special Agent Patricia Weber of the Federal Bureau of

Investigation applied to the Court for a combined civil and criminal seizure warrant

pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).  Special Agent Weber filed a

twelve paragraph affidavit in support of her application based upon "information

received from Internal Revenue Service Special Agents and United States Postal

Inspectors" and "information [she] received directly from witnesses."  (Doc. 33 Weber

Aff. ¶ 2.)  Weber stated that Black owned and actively operated Blackwell, LLC solely

for the support and continuation of the National School Fitness Foundation (NSFF) and

its activities.  (Id. ¶ 6.)  Weber stated that "NSFF and two individuals . . . have been

indicted for bank fraud, mail fraud, wire fraud, and money laundering" for "essentially

operating a 'Ponzi' scheme" that involved school districts across the country.  (Id. ¶ 5.)

Weber described the scheme as follows:

> NSFF was a non-profit corporation that was providing fitness equipment packages, known as the LIFT America Program to elementary and high schools. . . . The school districts were required to pay for the equipment package up-front.  Most of the schools entered into a lease agreement with banks in order to acquire the program.  NSFF agreed to reimburse the schools with equal monthly payments over a 36 month period.  NSFF

represented to the schools that NSFF would acquire state and federal grants and private contributions for those reimbursement payments.  In actuality, the reimbursements were made with funds obtained through the enrollment of subsequent schools into the LIFT America Program.  Therefore, NSFF and the other persons involved were essentially operating a "Ponzi" scheme.

(Id. ¶ 5.)  Weber also described Black's involvement in and knowledge of the scheme:

Black's operative functions included direct interaction with the schools and banks in facilitating the signing of the lease agreements.  Black made representations to both school and bank officials that NSFF was funded by grants and contributions.  At the same time, my investigation has disclosed that Black had knowledge that there were little or no funds being gained from sources outside of NSFF.  Black was aware that the reimbursements were being paid to schools from the enrollment of subsequent schools into the LIFT America Program.
. . . . Representatives from at least one bank that engaged in multiple financing transactions with school districts told me that Shanna Black personally met with its personnel regarding the financial status of NSFF. Black assured bank personnel that NSFF was financially sound and would be able to meet all of its financial obligations, which, according to my investigation, was untrue.

(Id. ¶¶ 7-8.)

Weber stated that "[t]hrough the wealth that Shanna Black gained as a result of the fraudulent activities of NSFF, Shanna Black and her husband . . . enjoyed a considerable change in lifestyle.  A review of their financial records discloses that they went from owning modest assets to buying a large home and other property, in addition to making investments."  (Id. ¶ 10.)  Weber continued:

I have reviewed the financial records of Blackwell Enterprises, Blackwell LLC, and Shanna Lewis Black.  The records show that Blackwell was funded solely from the operations of NSFF and Black's income was derived from Blackwell. . . . The financial records also disclose that a check was written on the account of Blackwell, LLC—an account funded by proceeds of the fraud—in the amount of $60,000 and was payable to Sentinel Financial Services.  This one time payment to Sentinel funded a mutual fund account.

(Id. ¶ 11.)  Weber stated that she believed the $60,000 was "derived from proceeds

traceable to or involved in violations of 18 U.S.C. §§ 1341, 1343, 1344, 1956, and 1957 subject to forfeiture and seizure pursuant to 18 U.S.C. §§ 981 and 982."  (Id. ¶ 4.)

Based upon Weber's affidavit, on December 30, 2004, the Honorable United States Magistrate Judge J. Earl Cudd issued a seizure warrant for $60,000 held in a Sentinel Financial Services account jointly in the name of Black and her husband. (Docs. 33-34.)  On January 6, 2005, in executing the warrant on Sentinel Financial Services, the United States was informed that the custodian for the Sentinel Financial Services account was Sentinel Administrative Services Co.  (See Docs. 31-32, 34.) Thus, the fund was not seized at that time.

On January 11, 2005, Weber applied for a seizure warrant which named Sentinel Administrative Services Co. as the custodian of the same $60,000 sought in the December 30, 2004 seizure warrant application.  (Doc. 31.)  Her affidavit in support of the seizure warrant is identical to the one presented to Judge Cudd on December 30, 2004 with the exception of paragraph thirteen which reads:

> I believe my previous affidavit in support of a warrant for the seizure of funds is true but have determined that the custodian of funds for the Sentinel Financial Services account is known as Sentinel Administrative Services Co., and therefore a new warrant is requested to permit seizure of such funds from the custodian.

(Doc. 31 Weber Aff. ¶ 13.)  On January 11, 2005, Magistrate Judge Cudd issued the seizure warrant based upon Weber's affidavit.  (Doc. 32.)  The seizure warrant was executed and the $60,000 account seized on January 11, 2005 at 4:00 p.m.  (Id.)

Also on January 11, 2005, a Superceding Indictment was filed which named Shanna Black and which, inter alia, charged that on April 8, 2003, $60,000 was paid to Sentinel Financial Services from an account of Blackwell funded with proceeds of fraud.

4

(Doc. 36, Count 43.)  The Superceding Indictment also charged that a payment of $20,000 was made to Gene Haney Chevrolet from an account of Blackwell funded with proceeds of fraud.  (Id. Count 45.)  The Superceding Indictment's forfeiture allegations sought criminal forfeiture of a 2003 Chevrolet truck, Black's residence, and the previously seized $60,000 in the Sentinel Financial Services account.  (Id.)  The grand jury found probable cause to support the charge that the truck and Sentinel Financial funds were forfeitable as proceeds of fraud and as property involved in money laundering transactions.  (Id.)

On January 20, 2005, U.S. Postal Inspector Gloria Faust applied for a seizure warrant for the 2003 Chevrolet truck owned by Black or Blackwell, LLC.  (Doc. 72.)  In her six paragraph affidavit, Inspector Faust stated that her affidavit was "made on information provided to [her] by other law enforcement officers and agencies and on [her] own personal knowledge and participation in the investigation.  (Id. ¶ 2.)  In two of the paragraphs of her affidavit, Inspector Faust's affidavit restates the charges and forfeiture allegations leveled against Black in the January 11, 2005 Superceding Indictment.  (Id. ¶¶ 4-5.)  Based upon Faust's affidavit, on January 20, 2005, Magistrate Judge Cudd issued a criminal seizure warrant for the Chevrolet truck pursuant to 21 U.S.C. § 853(f), as incorporated by 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(b)(1). (Doc. 73.)

On January 20, 2005, the United States filed a fifteen page Ex Parte Application for a Post-Indictment Restraining Order and Memorandum of Law.  (Doc. 29.)  The application, inter alia, sought an order from the Court restraining Black's residence.  (Id. at 12.)  In its application, the United States contended probable cause existed for the

issuance of the restraining order because Black had been indicted by a grand jury which had also determined that there was probable cause that her residence would be subject to forfeiture.  (Id. at 10.)  In its application, the United States argued that "the purpose of pre-trial restraint of property is to preserve the availability of property that can be forfeited after trial."  (Id.)  On January 20, 2005, the Honorable District Court Judge Joan N. Ericksen issued a Restraining Order pursuant to 21 U.S.C. § 853(e)(1)(A), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c) which restrains Black from selling or encumbering her residence and requires her to maintain the condition of the property.  (Doc. 30.)  The United States has not seized Black's residence or otherwise restricted her use or enjoyment of the property.  (Doc. 142 at 4.)  Thereafter, the United States also, apparently, filed a Notice of Lis Pendens against Black's residence.  (Doc. 142 at 4.)

   **B. Basis for Black's Motion**

   Black now moves the Court for an Order returning property owned by her that was seized by federal agents.  Specifically, she seeks (1) the return of the 2003 Chevrolet truck; (2) the return of the $60,000 Sentinel fund; (3) the return of $17,832.84 held at TrendWest Resorts, and (4) the lifting of the restraint of her private residence. (Doc. 98.)  At the motion hearing, the United States represented that the $17,832.84 held at TrendWest Resorts had not been seized.  Therefore, the Court recommends denying as moot that portion of the motion concerning the TrendWest Resort fund. Further, the United States represented that the Chevrolet truck has been sold, so the Court deems Black's motion for return of the truck as one for the return of the proceeds of the sale of the truck.

Black challenges the seizure warrants as having (1) no statutory basis; (2) been issued with no pretrial due process to contest the allegations made therein; and (3) no probable cause.  Black also argues that she is entitled to, and has not yet received, a post-indictment, pre-trial probable cause hearing at which the Court could reconsider the grand jury's probable cause determination concerning the forfeiture of her real property which served as the basis for the January 20, 2005 issuance of the restraining order.

C.    **Court's Recommendation**

1.    **Statutory Basis for Seizure Warrant for Sentinel Financial Funds**

Black challenges the statutory authority for the issuance of the warrant authorizing seizure of the Sentinel Financial funds.  She argues that such an ex parte pre-indictment seizure is not statutorily authorized.  The warrant in question was authorized pursuant to both civil and criminal seizure statutes.  (See Docs. 31, 33.) Special Agent Weber specifically alleged that Black had violated 18 U.S.C. §§ 1341, 1343, 1344, 1956, and 1957.  (Docs. 31 and 33 Weber Aff. ¶ 4.)  Section 981(b)(1) of the United States Code expressly authorizes, inter alia, seizure warrants for property subject to forfeiture, such as where the property represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. §§ 1341 or 1343, or constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, or is fairly traceable to property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.  Civil seizure warrants "shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules

of Criminal Procedure." § 981(b)(2).  Such warrants may be issued ex parte, and, in fact, issuance based on ex parte application is commonplace.  Thus, the Court finds the seizure warrant was authorized under federal law and was issued only after a judicial determination that probable cause existed for its issuance.[2]

> ### 2.    Black's Request for a Pre-Trial Hearing on the Seizure Warrants
>
> #### a.    Hearing to determine whether seizure warrants were necessary to secure the property

Black also requests the Court for "an opportunity to be heard" on the issues of whether (1) the United States has shown probable cause that the less restrictive device of a restraining order would be sufficient to secure the $60,000 and the Chevrolet truck; and (2) whether any exigent circumstances existed requiring the ex parte seizures.  (Doc. 100 at 15.)  Black argues that the criminal seizure statute, 21 U.S.C. § 853(f) requires that a restraining order be insufficient to assure the availability of the property which is the subject of the forfeiture.  (Id.)

Black's position rests largely on the pronouncement by the United States Supreme Court in James Daniel Good Real Property, 510 U.S. 43 (1993) and cases interpreting that case to support her position that she is entitled to a pre-trial hearing on the validity of a seizure warrant issued after judicial review.  (Id.)  The James Daniel

---

[2] The Court notes that, while Magistrate Judge Cudd authorized the seizure of the $60,000 on December 30, 2004 under the civil authority cited in the application and affidavit, it appears the property was not actually seized until January 11, 2005, the same day the grand jury returned the Superceding Indictment charging Black with participating in the conspiracy to defraud school districts and to launder the proceeds therefrom.  For the record, the Court finds that the seizure of the $60,000 was authorized under the civil or criminal seizure statutes enumerated in the application for the warrant.

Good Court held that absent a showing of exigent circumstances, the Due Process Clause requires notice and a hearing before real property can be subject to civil forfeiture.  510 U.S. at 62.  The James Daniel Good Court distinguished its holding from its decision in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974) where the Court determined that the similar seizure of personal property was not entitled to notice and a hearing because, unlike real property, personal property was more difficult to retain for possible forfeiture.  Id. at 51-57.  The Eighth Circuit has recognized this distinction between personal and real property.  See Madewell v. Downs, 68 F.3d 1030 (8th Cir. 1995) ("[N]o preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws.")  No real property was seized in this case.

The Chevrolet truck was seized pursuant to the criminal seizure statute.  That statute requires "probable cause to believe that the property to be seized would, in the event of conviction be subject to forfeiture and that a [restraining order] may not be sufficient to assure the availability of the property for forfeiture."  21 U.S.C. § 853(f).  Vehicles are easily moved, hidden, or sold.  See James Daniel Good, 510 U.S. at 57.  Therefore, the Court finds that a restraining order or similar device would not have been sufficient to assure that the Chevrolet truck would later be available for forfeiture.

The $60,000 in Sentinel Financial funds were seized either pursuant to the civil seizure statute or the criminal seizure statute.  The civil seizure statute, 18 U.S.C. § 981(b) does not contain a requirement similar to the criminal statute that a less restrictive means of securing the property be determined to be insufficient before the warrant issues.  Therefore, the Court finds that if the seizure of the funds were pursuant

9

to the civil statute, no hearing to determine whether the seizure warrant was the appropriate means to secure the funds is necessary.  If, on the other hand, the criminal seizure statute, 21 U.S.C. § 853(f), applies, the Court finds that such funds could be easily transferred and that the seizure warrant was necessary to insure that the funds would be available for later forfeiture.  Thus, the Court finds that no pre-trial hearing on the issues that Black proposes is required.  The Court, therefore, recommends denying Black's request for a pretrial hearing on the seizure warrants.

### b.   Franks hearing

Black argues that she is entitled "to a hearing regarding [the] affiant's veracity in [the] application for [the] warrant" pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (Doc. 100 at 3.)  Black asserts that "[t]he federal agents herein intentionally included false statements or made material omissions in their affidavits for the seizure warrants related to the defendant's vehicle and her Sentinel Financial . . . funds" and "[w]hen the deceptive and misleading information is disregarded, there is insufficient content remaining to support a finding of probable cause for the seizure warrants."  (Id. at 4.)  Specifically, Black challenges the following statements in Special Agent Weber's affidavit:

> NSFF and the other persons involved were essentially operating a "Ponzi"scheme.

> [M]y investigation has disclosed that Black had knowledge that there were little or no funds being gained from sources outside of NSFF.

> Black assured bank personnel that NSFF was financially sound and would be able to meet all of its financial obligations, which, according to my investigation, was untrue.

> Blackwell charged exorbitant fees to provide their services for NSFF.

10

> Through the wealth that Shanna Black gained as a result of the fraudulent activities of NSFF, Shanna Black and her husband . . . enjoyed a considerable change in lifestyle.
>
> On July 29, 2002, Shanna L. Black wrote a check on the account of Blackwell Enterprises—an account funded by proceeds of the fraud—to TrendWest Resorts in the amount of $17,832.84. The financial records also disclose that a check was written on the account of Blackwell, LLC—an account funded by proceeds of the fraud—in the amount of $60,000 and was payable to Sentinel Financial Services.

(Id. at 4-5 (quoting Weber Affidavit.))

In support of her attack on Weber's affidavit, Black argues that Weber knew that "Black believed that NSFF informed the schools purchasing the program that it 'can be free of cost,' and that 'as long as the foundation has enough money to pay their obligations, they will.'" (Id. at 6.)  Black also told Weber that "the presentations informed schools the contributions were not guaranteed."  (Id.)  According to Black, Weber had no evidence "that Black assured bank personnel that it would be able to meet all of its financial obligations.  In fact, the evidence available to Agent Weber was that Black 'was not aware of specific financial information.'"  (Id.)  Black claims that NSFF was attempting to raise funds to pay for the equipment and that Weber knew of these efforts. (Id.)  According to Black, the fees Blackwell charged NSFF were not exorbitant and no evidence before Weber suggested otherwise.  (Id.)  Black also contends that it is significant that Weber did not indicate in her affidavit that the property subject to the seizure was part of a bankruptcy estate in bankruptcy proceedings in Utah.[3]  (Id.)  Black

---

[3] The Court disagrees.  Criminal actions against the debtor are specifically exempt from the automatic stay that issues when a bankruptcy action is filed.  See 11 U.S.C. § 362(b)(1) (stating that a bankruptcy filing "does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor").  Furthermore, it is not clear that Weber possessed information that the subject property

argues further that the general nature of the allegations made fail to show that the $60,000 seized were proceeds of fraud.  (Id. at 13.)  Finally, Black contends that less restrictive means of securing the $60,000 for possible forfeiture, such as a restraining order, were available to the United States, making the use of the seizure warrant unreasonable.  (Id. at 14-17.)

Under the rule set forth in Franks, "if an officer omits critical information from a search warrant application and obtains a warrant, the resultant search may be unreasonable under the Fourth Amendment."  United States v. Stropes, 387 F.3d 766, 771 (8th Cir. 2004).  But before a court reopens the probable cause issue for a hearing a defendant must make a substantial preliminary showing that: (1) a false statement was included in the warrant affidavit either (a) intentionally or (b) with reckless disregard for the truth; and (2) the false information was necessary to the finding of probable cause.  United States v. Carpenter, 422 F.3d 738, 745 (8th Cir. 2005), cert. denied, 126 S. Ct. 1115 (2006).  "The substantiality requirement is not lightly met" and the defendant's allegations "should be accompanied by a statement of supporting reasons" and "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  United States v. Wajda, 810 F.2d 754, 759 (8th Cir. 1987), cert. denied, 481 U.S. 1040 (1987).  "'Mere negligence on the part of law enforcement officers'" does not satisfy the first prong of the hearing prerequisites.  Carpenter, 422 F.3d at 745 (citation omitted).

_____

was part of any bankruptcy proceedings.

The Court has carefully reviewed Black's allegations and submission of proof and finds that Black has failed to show that either Special Agent Weber's or Inspector Faust's affidavits contained intentionally or recklessly false statements.  Therefore, the Court recommends denying Black's request for a <u>Franks</u> hearing.

### 3.   Probable Cause for Seizure Warrants

Black argues that insufficient probable cause existed for the issuance of the warrants.  (Doc. 100 at 9-13.)  To the extent this issue is ripe for review given the Court's above findings, the Court has reviewed the affidavits provided in support of each of the contested seizure warrants.  The Court finds that each is supported by probable cause for the reasons set forth below.

### a.   Sentinel Financial fund warrants

As noted above, the seizure of the Black's $60,000 in Sentinel Financial funds was based on the affidavit of Special Agent Weber.  (Doc. 33.)  Weber's affidavit states that Black's income was derived from Blackwell, LLC and that Blackwell was funded solely from the operations of the NSFF.  The Court finds that Weber also specifically describes the role of NSFF and Black in perpetrating the fraud and other crimes charged against NSFF in the October 19, 2004 Indictment.  Black has not presented any evidence that substantially detracts from these statements.  Weber stated that on July 29, 2002, Black wrote a check on the Blackwell, LLC account to Sentinel Financial Services in the amount of $60,000 to fund a mutual fund account.  That $60,000 was the subject of the seizure warrant.  Given the above, the Court finds that probable cause existed when the seizure warrants for the Sentinel funds issued on December 30, 2004

and January 11, 2005.

### b.    Chevrolet truck warrant

As to the probable cause challenge to the seizure warrant for the Chevrolet truck,
Black argues that Inspector Faust's affidavit merely parroted the language of the
January 11, 2005 Superceding Indictment, relied on the probable cause of the indicted
group of defendants as a whole, and set forth no "factual nexus between the vehicle
and the underlying criminal allegations." (Id. at 12.)  Black also contends that it is
significant that Inspector Faust did not indicate in her affidavit that the property subject
to the seizure was part of a bankruptcy estate in bankruptcy proceedings in Utah.[4]  (Id.
at 6.)  Finally, Black contends that less restrictive means of securing the Chevrolet truck
for possible forfeiture, such as a restraining order, were available to the United States,
making the use of the seizure warrant unreasonable.  (Id. at 14-16.)

The Chevrolet truck seizure warrant was based upon the affidavit of Faust.  At
the time Faust filed her affidavit, Black had been indicted and charged in the conspiracy.
Faust stated that her affidavit was "made on information provided to [her] by other law
enforcement officers and agencies and on [her] own personal knowledge and
participation in the investigation." (Id. ¶ 2.)  Black attacks the affidavit as resting on the
probable cause determination made by the grand jury.  (Doc. 100 at 10-12; Doc. 149 at
4-6.)  First, as the United States argued at the motion hearing, it is relevant that a
federal grand jury found probable cause to charge Black with the counts contained in
the Superceding Indictment.  Second, Faust did indicate in her affidavit that the

---

[4] See the Court's discussion of the relevance of this information in footnote 3,
supra.

14

statements made therein were based upon information provided to her by other law enforcement officials and agencies and upon her own knowledge as an investigator of the criminal activity charged.  It is not at all surprising that her statements would closely mirror the charges contained in the Superceding Indictment.  Third, as with the Weber affidavit, the Faust affidavit does link Black to the conspiracy charged.  And Faust stated the Chevrolet truck was acquired by Black with proceeds of the fraud scheme or involved in money laundering transactions.  Given the above, the Court finds that probable cause existed when the seizure warrant for the Chevrolet truck issued on January 20, 2005.

### 4.    Entitlement to A Post-Restraint, Pretrial Hearing on the Real Property Restraining Order

Black contends that she is entitled to a post-restraint, pretrial hearing based upon her Fifth Amendment due process rights and her Sixth Amendment rights because the restraint on her real estate deprives her of access to property needed to pay legal counsel of her choice.  (Doc. 100 at 17-21.)  Black relies primarily on the pronouncement of the Second Circuit Court of Appeals in United States v. Monsanto, in which that court stated:

> (1) the fifth and sixth amendments, considered in combination, require an adversary, post-restraint, pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte pursuant to 21 U.S.C. § 853(e)(1)(A); (2) consistent with 21 U.S.C. § 853(e)(3), the court may receive and consider at such a hearing evidence and information that would be inadmissible under the Federal Rules of Evidence; and (3) grand jury determinations of probable cause may be reconsidered in such a hearing.

924 F.2d 1186, 1203 (2d Cir. 1991) (en banc), cert. denied, 502 U.S. 943 (1991).  To

determine whether due process requires a post-restraint, pretrial hearing, the Court

weighs three factors, set forth by the Supreme Court in <u>Mathews v. Eldridge</u>:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

The Eighth Circuit has not further elaborated on the analysis applied when

considering whether a defendant whose property is restrained pursuant to 18 U.S.C. §

853(e) is entitled to a hearing on a post-restraint, pretrial hearing.  After a review of the

case law, this Court adopts a two-part test to determine whether such a hearing is

required.  The test is articulated by <u>United States v. Jones</u>, 160 F.3d 641 (10th Cir.

1998) and <u>United States v. Farmer</u>, 274 F.3d 800 (4th Cir. 2001).  Under the <u>Jones-

Farmer</u> test, a defendant is entitled to a post-restraint, pretrial hearing <u>only if</u> he

demonstrates: (1) "he has no assets other than those restrained, with which to retain

private counsel and provide for himself and his family"; and (2) "a prima facie showing of

a bona fide reason to believe that the grand jury erred determining that the restrained

assets" would be subject to forfeiture if the defendant is convicted.  <u>Jones</u>, 160 F.3d at

647.

First, while Black has arguably <u>alleged</u> she needs the restraining order lifted to

pay for legal counsel of her choice and to cover the cost of living expenses (<u>See</u> Doc.

100 at 20, 23), she has not shown that she has been unable to retain the counsel of her

choice or to pay for necessary living expenses because of the inability to sell or

16

mortgage her residence.  At the motion hearing, Black was represented by three attorneys.  In terms of the factors set forth by the Supreme Court in <u>Mathews</u>, if she has the means to hire an attorney independently of the restrained assets, she does not have a "private interest" in obtaining a pre-trial hearing on the validity of the restraining order. <u>Farmer</u>, 274 F.3d at 804.  Therefore, the Court finds that Black's Sixth Amendment rights are not implicated when considering the need for a post-restraint, pretrial hearing.

Second, "the Government" may "seize property based on a finding of probable cause to believe that the property will ultimately be proved forfeitable."  <u>United States v. Monsanto</u>, 491 U.S. 600, 615-16 (1989).  "[N]either the fifth nor sixth amendment rights of a defendant are offended by forfeiture of property which would otherwise be used to pay an attorney. . . . [P]retrial restraint of such assets is permissible after a showing of probable cause."  <u>United States v. Unit 7 and Unit 8</u>, 890 F.2d 82, 84 (8th Cir. 1989) (en banc).  The Eighth Circuit recognizes that § 853(e) authorizes pretrial restraint of property as long as associated with the crime charged.  <u>See</u> <u>United States v. Field</u>, 62 F.3d 246, 248-49 (8th Cir. 1995).  This is especially true where the defendant is "not ousted from his property, but merely restrained from disposing of it."  <u>Id.</u>  "Indeed, it would be odd to conclude that the Government may not restrain property, such as the home and apartment in [defendant's] possession, based on a finding of probable cause, when [the United States Supreme Court has] held that (under appropriate circumstances), the Government may restrain persons where there is a finding of probable cause to believe that the accused has committed a serious offense."  <u>Id.</u> Further, as the Fourth Circuit Court of Appeals has concluded:

The probable cause found by the grand jury satisfies the government's

17

burden of proving the allegations of the indictment.  This is evident from the legislative history of the Comprehensive Crime Control Act of 1984, which explains: "For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based."

In re Billman, 915 F.2d 916, 919 (4th Cir. 1990) (citation omitted), cert. denied, 500 U.S. 952 (1991).

In returning the Superceding Indictment, the grand jury found probable cause existed that Black's residence would be forfeitable as proceeds of Defendants' fraud violations or involved in the money laundering scheme.  (See Doc. 178.)  The United States' application to Judge Ericksen for an order restraining Black's property made express and specific reference to the grand jury's probable cause finding concerning the forfeitability of her residence.  (See Doc. 29.)  The Court finds that "[t]he return of the indictment by the federal grand jury in this matter represents a determination of probable cause sufficient to issue a restraining order under 21 U.S.C. § 853(e)(1)(A), as 'Congress intended for the indictment itself to constitute sufficient notice of the Government's intent to seek forfeiture.'"  United States v. Sellers, 848 F. Supp. 73, 75 (E.D. La. 1994) (citation omitted).  In any event, having re-reviewed the application before Judge Ericksen, the Court finds that it is sufficiently detailed to warrant a probable cause finding independent of the grand jury's conclusion to issue the restraining order.  Therefore, the Court recommends denying Black's request for a post-restraint, pretrial hearing on the constitutional validity of the restraining order.

Given the above analysis, the Court finds that neither Black's due process or Sixth Amendment rights are offended by denying her a post-restraint, pretrial hearing,

18

and the Court recommends denying Defendant Black's Motion for Return of Property/Pretrial and to Vacate or Modify the Restraining Order and to Request an Expedited Hearing (Doc. 98).

## II.  DEFENDANTS' MOTIONS TO CHANGE VENUE FOR TRIAL (Docs. 180, 184)

Defendants move to transfer the venue of the trial of their case from the District of Minnesota to the District of Utah pursuant to Federal Rules of Criminal Procedure 18 and 21(b).  (Docs. 180, 184.)  In support of their motions they argue that (1) Article 3 of the United States Constitution, the Sixth Amendment, and Rule 18 mandate that Counts 20-40 of the Third Superceding Indictment, which charge money laundering in violation of 18 U.S.C. §§ 1956 and 1957, and the forfeiture allegations of the same indictment, which are "inextricably tied" to the money laundering counts, be prosecuted in Utah; and (2) the Court should use its discretionary authority under Rule 21(b) to transfer the entire case to Utah for the convenience of the witnesses and parties.  (See Docs. 180, 185.)

### A.    Mandatory Venue Transfer Pursuant to Rule 18

The constitutional basis for transfer of venue rests on two passages found in the Constitution.  "The Trial of all Crimes . . . shall be by jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place as the Congress may by Law have directed."  U.S. Const. art. 3, § 2, cl. 3.  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously

ascertained by law . . . ."  Id. amend. VI.  Defendants argue these constitutional

principles are codified in Federal Rule of Criminal Procedure 18 which reads:

> Unless a statute or these rules permit otherwise, the government must
> prosecute an offense in a district where the offense was committed.  The
> court must set the place of trial within the district with due regard for the
> convenience of the defendant and the witnesses, and the prompt
> administration of justice.

Defendants further argue that the United States Supreme Court has held that money

laundering charges based on §§ 1956 and 1957 must be prosecuted where the financial

transaction—the act of using the funds—occurred.  (Doc. 185 at 6-7.)  Defendants

argue that once the funds at issue in this case were transferred out of Minnesota, "all of

the activity and use of those funds which the government contends constitutes criminal

money laundering occurred exclusively in Utah."  (Id. at 8.)  Defendants rely heavily on

the Supreme Court's decision in United States v. Cabrales, 524 U.S. 1 (1998) in support

of their position.

In Cabrales, the Eighth Circuit affirmed the district court's dismissal of two counts

of an indictment filed in the Western District of Missouri: conducting financial

transactions to avoid a transaction-reporting requirement in violation of 18 U.S.C. §

1956(a)(1)(B)(ii) and engaging in a monetary transaction in criminally derived property

of a value greater than $10,000 in violation of 18 U.S.C. § 1957.  109 F.3d 471, 472-74

(8th Cir. 1997).  The defendant in Cabrales made a series of deposits and withdrawals

at a Florida bank.  Id. at 472.  The money was traceable to illegal drug trafficking sales

which occurred in Missouri.  Id.  The Eighth Circuit stated that, "Under 18 U.S.C. §

3237(a), 'continuing offenses' are deemed committed, and venue over those offenses is

therefore proper, 'in any district in which such offense was begun, continued, or

completed.'" Id.  But the court determined that all of the defendant's money laundering activity began, continued, and was completed in Florida and found that the government did not contend that the defendant transported the money from Missouri to Florida.  Id. at 472.

The Supreme Court granted certiorari and affirmed the Eighth Circuit's decision. Cabrales, 524 U.S. at 9-10.  The Cabrales Court found that the government did not charge the defendant with conspiracy or link her to or assert her responsibility for, acts done by others.  Id. at 7.  Nor did the indictment charge the defendant with aiding and abetting the Missouri drug sales.  Id.  The Court stated that the defendant was "charged in the money-laundering counts with criminal activity 'after the fact' of an offense begun and completed by others."  Id.  The Court acknowledged that "[m]oney laundering . . . arguably might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another" but stated, "that is tellingly not this case."  Id. at 8.  Based on these findings, the Court determined that "the place appropriate to try the 'after the fact' actor" was in Florida and not Missouri.  Id.

The Eighth Circuit has had at least three occasions to interpret the holding in Cabrales since it was handed down.  In the first case, Prosper v. United States, the Eighth Circuit reviewed a district court's determination that a count charging conspiracy to launder funds in violation of 18 U.S.C. § 1956(h) could be brought in Minnesota even though the defendant opened the bank account and made deposits and withdrawals on that account exclusively in Georgia.  218 F.3d 883, 883-84 (8th Cir. 2000) (per curiam). The district court found that the defendant "obtained fraudulently-acquired funds in

21

Minnesota, sent them to Georgia to be laundered, and then sent them back to Minnesota for distribution.  Each of these steps were stages in the conspiracy to commit money laundering, and were within the scope of that conspiracy."  Id. at 884 (quoting the district court judge).  The Eighth Circuit, in citing to Cabrales, affirmed the district court and stated, "we conclude that [the defendant] urges far too narrow a view of the overt acts that furthered this long-standing, [multistate] money-laundering conspiracy."  Id.

In the second case, United States v. Totaro, the Eighth Circuit reviewed a district court's determination that venue was proper in South Dakota as to money laundering charges in a case where the defendant was charged with sixty-one counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions and racketeering.  40 Fed. Appx. 321, 322 (8th Cir. 2002) (per curiam), cert. denied, 537 U.S. 1141 (2003).  The defendant had operated a scheme in which advance fees were paid by credit-risk individuals and businesses in exchange for the defendant brokering high-risk loans.  Id.  The defendant used unwitting financial institutions in New York as part of his scheme to defraud those paying the advance fees, including a number of individuals from South Dakota who wired the New York defendant money.  Id.  In affirming, the Eighth Circuit, citing Prosper, determined that "[v]enue was proper . . . because [the defendant's] criminal scheme began with the transfer of funds from bank accounts in South Dakota to his lending institutions [in New York].  An offense 'begun in one district and completed in another' may be 'prosecuted in any district in which [the] offense was begun, continued, or completed,' 18 U.S.C. § 3237(a), and we have approved of venue in similar circumstances."  Id. at 323.

Finally, in <u>United States v. Nichols</u>, the Eighth Circuit reviewed a district court's determination that the money laundering counts against the defendant were properly venued in the Western District of Missouri despite the fact that the actual money laundering portion of the defendant's crime spree occurred wholly within California.  416 F.3d 811, 824 (8th Cir. 2005), <u>petition for cert. filed</u>.  In <u>Nichols</u>, the defendant and his co-defendant committed fraudulent acts in California, Tennessee, and Missouri with the aid of others involving the sale of cars.  <u>Id.</u> at 815.  The defendants were charged with conspiracy to commit interstate transportation of property by fraud, interstate transportation of property stolen by fraud, conspiracy to commit money laundering, money laundering, and civil forfeiture.  <u>Id.</u> at 814.  The Eighth Circuit described the money laundering offense as follows:

> [The money collected was] funneled to [a co-defendant] who deposited the funds in a California bank account. [The co-defendant] would then transfer a portion of the funds to California casino accounts where [defendant] would exchange the money for casino chips or cash. [The co-defendant] also made direct withdrawals from the account to get cash, make transfers to family members, and to buy vehicles. In addition, as the scheme progressed, [the co-defendant] would refund money to purchasers of the [cars] who were unwilling to wait for delivery.

<u>Id.</u> at 815.  In affirming the district court, the Eighth Circuit stated:

> As in <u>Cabrales</u>, the actual money laundering portion of [the defendant's] crime spree occurred wholly within the state of California.  Significantly, in <u>Cabrales</u>, the Court carefully prefaced the opinion by explaining that the defendant was neither alleged to have transported funds from Missouri to Florida, nor was she charged with participation in the illegal activity in Missouri. The Supreme Court approved of our pronouncement that "[m]oney laundering . . . might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another."  Also, the Court was careful to explain that Cabrales was not charged with a conspiracy that would link her to the acts perpetrated in Missouri.
>     In this case, [the defendant] was charged with causing money

> obtained by fraud to be transported from Missouri to California. In addition,
> [the defendant] was charged with a conspiracy linking him to fraudulent acts
> committed in Missouri. [The defendant] was convicted of interstate
> transportation of property stolen by fraud. As such, this case is
> distinguishable from <u>Cabrales</u>. We conclude that venue was proper in
> Missouri, a state where much of the fraud perpetrated by [the defendant] was
> initiated.

<u>Id.</u> at 824.

The Court finds that the facts presented here are much closer to those in the post-<u>Cabrales</u> Eighth Circuit opinions than to the facts in the <u>Cabrales</u> case which Defendants rely on in support of their motion. Defendants are charged with the transportation of funds from Minnesota either directly or through an aider and abettor and they are charged with participation in the fraud occurring in Minnesota which generated the funds they are alleged to have laundered. (<u>See</u> Doc. 178.) These charges allege continuing offenses and are much different from those present in the <u>Cabrales</u> case. Therefore, the Court finds that there is no constitutional or other bar to prosecuting Defendants in Minnesota on the money laundering counts. Because the Court concurs with Defendants that the forfeiture allegations are "inextricably tied to the money laundering allegations in Counts 20-40" (Doc. 185 at 9), the Court also finds that there is no legal bar to prosecuting the forfeiture allegations in Minnesota.

## B.  <u>Discretionary Venue Transfer Pursuant to Rule 21(b)</u>

Finally, Defendants argue that the Court should use its discretionary authority pursuant to Federal Rule of Criminal Procedure 21(b) to transfer the entire case to Utah for the convenience of the parties and witnesses. (Docs. 180, 185.) Defendants contend that: (1) the corporation at the center of the alleged criminal activity is NSFF which is located in Utah; (2) all of the defendants are residents of Utah; (3) all of the

24

employees and most of the officers of NSFF live in Utah; (4) the majority of NSFF

vendors are domiciled in Utah; (5) most of the financial institutions that dealt with NSFF

are located in Utah; (6) many of the witnesses will come from Utah; and (7) most of the

defense counsel are from Utah.  (See Docs. 180, 185.)  Defendants predict a six week

trial which they argue would be an extreme hardship on Defendant Black who has

young children at home in Utah and which they calculate will cost approximately

$272,000 in airfare, hotel accommodations, and transportation for counsel, defendants,

and witnesses.  (Doc. 185 at 11-14.)

Federal Rule of Criminal Procedure 21(b) provides: "Upon the defendant's

motion, the court may transfer the proceeding, or one or more counts, against that

defendant to another district for the convenience of the parties and witnesses and in the

interest of justice."  As the Eighth Circuit has stated, "[t]he question of transfer under

Rule 21(b), 'for the convenience of parties and witnesses and in the interest of justice',

is one involving realistic approach, fair consideration and judgment of sound discretion

on the part of the district court."  United States v. Phillips, 433 F.2d 1364, 1368 (8th Cir.

1970), cert. denied, 401 U.S. 917 (1971).  Courts consider the following factors in

determining whether transfer is warranted:

> (1) location of corporate defendant; (2) location of possible witnesses; (3)
> location of events likely to be in issue; (4) location of documents and records
> likely to be involved; (5) disruption of defendant's business unless the case
> is transferred; (6) expense to the parties; (7) location of counsel; (8) relative
> accessibility of place of trial; (9) docket condition of each district or division
> involved; and (10) any other special elements which might affect the transfer.

United States v. McGregor, 503 F.2d 1167, 1170 (8th Cir. 1974), cert. denied, 420 U.S.

926 (1975).

In this case, while the defendants reside in Utah and some of the witnesses testifying at trial will come from Utah, much of the fraudulent activity charged is alleged to have occurred in Minnesota and witnesses from Minnesota will be important to the government's case.  (See Doc. 178.)  Still other witnesses are likely to come from neither Utah nor Minnesota, some coming from states closer to Minnesota than Utah. (See Doc. 195 at 8.)  Finally, according to the United States, nearly all of the relevant documents have been computerized, favoring neither forum as concerns the relevant documents.  (Id. at 7.)  Under the circumstances presented here, the Court finds a transfer of the proceeding to Utah is not warranted.

In sum, the Court finds that the Court is not required to transfer this case pursuant to Rule 18 and recommends that the Court decline to use its discretionary authority to transfer the case pursuant to Rule 21(b).  Thus, the Court recommends denying Defendants' Motions to Change Venue for Trial (Docs. 180, 184.)

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1.    Defendant Shanna Black's Motion for Return of Property/Pretrial and to Vacate or Modify the Restraining Order and to Request an Expedited Hearing (Doc. 98) be **DENIED in part as moot and DENIED in part**; and

2.    Defendants' Motions to Change Venue for Trial (Docs. 180, 184) be **DENIED**.

Dated: March 24, 2006

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

26

Pursuant to D. Minn. L.R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by <u>April 10, 2006</u> a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.