UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                             Criminal No. 04-403 (JNE/SRN)
                                                 ORDER
Cameron J. Lewis (1) and
J. Tyron Lewis (2),

    Defendants.

A jury found Cameron Lewis and J. Tyron Lewis guilty of mail fraud; wire fraud; bank fraud; conspiracy to commit mail, wire, and bank fraud; conspiracy to launder funds; and money laundering. Cameron Lewis timely moved for a new trial. J. Tyron Lewis timely moved for a judgment of acquittal and, in the alternative, a new trial. For the reasons set forth below, the Court denies the motions.

### *Cameron Lewis's motion*

Cameron Lewis moves for a new trial on the ground that his trial should have been severed from that of J. Tyron Lewis. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The trial court 'has wide discretion in deciding whether to grant a new trial in the interest of justice,' but the authority to set aside a jury verdict and grant a new trial 'should be exercised sparingly and with caution.'" *United States v. Nambo-Barajas*, 338 F.3d 956, 961 (8th Cir. 2003).

Cameron Lewis first argues that the defenses were irreconcilable. "The existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable." *United States v. Johnson*, 944 F.2d 396, 402 (8th Cir. 1991). "Defenses are deemed

irreconcilable when they 'so conflict that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" *United States v. Abfalter*, 340 F.3d 646, 652 (8th Cir. 2003) (quoting *United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989)). "The mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials." *Johnson*, 944 F.2d at 403. In this case, Cameron Lewis defended on the grounds that no fraud occurred and that he had no intent to defraud. J. Tyron Lewis defended on the grounds that the government failed to prove crimes were committed, that he had no intent to defraud, that he reasonably relied on others, that he did not know what salespeople were telling schools as part of the alleged fraud, and that he did not agree to commit any crime. The defenses were not irreconcilable.

Cameron Lewis also argues that severance should have been granted under *Bruton v. United States*, 391 U.S. 123 (1968). "*Bruton* is grounded on the Sixth Amendment right to confrontation and prohibits the admission of an out-of-court confession by a nontestifying defendant implicating a co-defendant by name in the crime." *United States v. High Elk*, 442 F.3d 622, 625 (8th Cir. 2006). *Bruton* applies to facially incriminating confessions. *United States v. Logan*, 210 F.3d 820, 822 (8th Cir. 2000) (en banc). Here, the Court discerns no *Bruton* violation in the admission of the evidence on which Cameron Lewis relies.

In short, the interest of justice does not require a new trial for Cameron Lewis. The Court therefore denies his motion.

*J. Tyron Lewis's motion*

J. Tyron Lewis moves for a judgment of acquittal. *See* Fed. R. Crim. P. 29(c)(1). He contends that the government failed to prove that he knowingly participated in a scheme or artifice to defraud schools, banks, or potential donors, or that he had an intent to defraud. When

a judgment of acquittal is sought based on insufficiency of the evidence, a court views the evidence in the light most favorable to the verdict and gives the government the benefit of all reasonable inferences that can logically be drawn from the evidence. *Nambo-Barajas*, 338 F.3d at 960. The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

Here, the evidence reveals that the National School Fitness Foundation (NSFF) sold a fitness program to school districts. The NSFF represented that the program was free because the NSFF would repay the school districts over time with funds raised from donors and other sources. J. Tyron Lewis was the chairman of the board of the NSFF. Joseph Mont Beardall, a participant in the NSFF's formation and the owner of a company that worked with the NSFF to install the fitness program ordered by school districts, testified that J. Tyron Lewis participated in the NSFF's fundraising efforts from 2000 through 2004. Bruce Olson, a participant in the NSFF's formation and the NSFF's attorney from 2000 to 2003, and Marion Markle, the NSFF's chief financial officer from 2001 to 2004, testified that the NSFF's fundraising efforts were almost completely unsuccessful. Beardall, Markle, and Olson testified that J. Tyron Lewis knew that the NSFF made payments to school districts that had purchased the fitness program from funds obtained almost exclusively through sales of the fitness program to other school districts. According to Olson, J. Tyron Lewis read a letter dated August 9, 2002, from Olson to Cameron Lewis in which Olson recommended that the letter be shared with the NSFF's board, warned of the NSFF's potential implosion, asserted that the NSFF was not operating in a manner consistent with representations provided to the Internal Revenue Service in the NSFF's application for

nonprofit status,[1] and advised the NSFF to make fair and accurate representations to school districts.  In a letter dated October 24, 2003, Olson advised the NSFF's board to make a complete and accurate disclosure of the NSFF's financial condition and fundraising progress to school districts that had purchased the fitness program and to those that were considering the program, recommended that the NSFF stop sales to new school districts until the NSFF attained financial solvency, and raised the possibility of criminal violations.  The next month, Olson sent a letter to J. Tyron Lewis in which Olson terminated his representation of the NSFF and recommended that the NSFF make additional disclosures to school districts about the NSFF's financial condition and fundraising plans.  Notwithstanding the NSFF's mounting liabilities, which ultimately amounted to tens of millions of dollars, the NSFF continued to sell the program to school districts without disclosing the NSFF's financial condition.

In the meantime, J. Tyron Lewis received more than one million dollars and construction work from the NSFF under the guise of a loan repayment.  Markle testified that he repeatedly gave checks drawn on NSFF's accounts to J. Tyron Lewis at the direction of Cameron Lewis and J. Tyron Lewis and that the Lewises told him the payments related to a loan made by J. Tyron Lewis to the NSFF.  According to Markle, Cameron Lewis asserted that the NSFF used the proceeds of the loan as start-up capital.  Despite repeated requests by Markle for loan documentation, neither J. Tyron Lewis nor Cameron Lewis provided satisfactory loan documentation to Markle.  One document provided by Cameron Lewis to Markle to document the loan consisted of a one-page memorandum dated before the NSFF came into existence. Markle testified that he gave J. Tyron Lewis a check for more than one million dollars after Cameron Lewis had told Markle that the loan had no outstanding balance.  An auditor retained

---

[1]   In the application, the NSFF represents that its predominant source of financial support will come from contributions from the general public.

by the NSFF to audit the NSFF from July 2001 to June 2003 experienced similar difficulties in obtaining information about the loan. The auditor ultimately withdrew from the audit in part because it was unable to determine the loan's outstanding balance at the start of the audit period, loan terms, and how payments made during the audit period reconciled with the loan agreement.

Viewing the evidence in the light most favorable to the verdict, a reasonable jury could find beyond a reasonable doubt that J. Tyron Lewis knowingly participated in a scheme or artifice to defraud schools, banks, or potential donors, and that he had an intent to defraud. He is therefore not entitled to a judgment of acquittal.

J. Tyron Lewis also moves for a new trial. *See* Fed. R. Crim. P. 33(a). He first argues that the Court should grant him a new trial based on the arguments he raised in connection with his motion for a judgment of acquittal. "[M]otions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution." *United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007). In deciding whether to grant a new trial, the district court may weigh the evidence and evaluate the credibility of the witnesses. *Id.* at 1051. The verdict must stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred. *Id.* Here, the evidence does not weigh against the jury's verdict. The Court perceives no miscarriage of justice in the guilty findings returned against J. Tyron Lewis.

J. Tyron Lewis next argues that he should receive a new trial because his trial should have been severed from that of Cameron Lewis. In support, he raises three arguments. First, he contends that the defenses were irreconcilable. As noted above, the Court rejects this argument. Next, J. Tyron Lewis contends that he was prejudiced by the government's decision not to introduce certain evidence. The Court rejects the assertion that the government's decision not to

introduce the evidence should yield a new trial for him. *Cf. United States v. Cole*, 380 F.3d 422, 427 (8th Cir. 2004); *United States v. Anders*, 602 F.2d 823, 825 (8th Cir. 1979). Finally, J. Tyron Lewis maintains that the jury was unable to compartmentalize the evidence as it related to each defendant. Because there is no evidence that he knowingly participated in a scheme to defraud with intent to defraud, J. Tyron Lewis argues, the guilty findings reveal the jury's inability to compartmentalize the evidence against the defendants. "Severance is never warranted simply because the evidence against one defendant is more damaging than that against another, even if the likelihood of the latter's acquittal is thereby decreased." *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (citation omitted). A "specific showing that a jury could not reasonably be expected to compartmentalize the evidence" is required for severance. *Id.* Again, evidence supports the guilty findings returned against J. Tyron Lewis. Whereas the jury found Cameron Lewis guilty on all counts submitted, the jury found J. Tyron Lewis not guilty on one count. J. Tyron Lewis has not demonstrated the jury's inability to compartmentalize the evidence. *See United States v. Carter*, 481 F.3d 601, 606 (8th Cir. 2007).

Finally, J. Tyron Lewis asserts that he should receive a new trial because the Court erred in giving an instruction on willful blindness. The Court is not persuaded that the instruction was improper. *See United States v. King*, 351 F.3d 859, 866-67 (8th Cir. 2003); *United States v. Barnhart*, 979 F.2d 647, 651-52 (8th Cir. 1992).

In short, J. Tyron Lewis is not entitled to a judgment of acquittal, and the interest of justice does not require a new trial for him. The Court therefore denies his motion.

*Conclusion*

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Cameron Lewis's motion for a new trial [Docket No. 334] is DENIED.

2. J. Tyron Lewis's motion for a judgment of acquittal and, in the alternative, a new trial [Docket No. 337] is DENIED.

Dated:  May 2, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge